DAVID N. WOLF (6688)
THOMAS D. ROBERTS (2773)
ANDREW DYMEK (9277)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: dnwolf@agutah.gov
E-mail: thomroberts@agutah.gov
E-mail: adymek@agutah.gov

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED UTAH PARTY, et al.,<br><br>Plaintiff,<br><br>v.<br><br>SPENCER J. COX, in his official capacity as the Lieutenant Governor of the State of Utah,<br><br>Defendants. | **DEFENDANT'S RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS AND SUPPLEMENTAL FACTS**<br><br><br>Case No. 2:17-cv-00655-DN<br><br>Judge David Nuffer |

In response to the Court's instructions by email dated July 13, 2017, Defendant responds to paragraphs 1-32 of the facts in Plaintiffs' Reply Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction [Doc.31] as follows:

## RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS

1. On Monday, May 22, 2017, one business day after Governor Herbert announced the special election to fill Representative Chaffetz's seat in the Third Congressional District, the United Utah Party held a press conference at the Utah State Capitol.

**Defendant's Response:** Undisputed.

2. During that press conference, Richard Davis announced the formation of the United Utah Party and informed the public that the Party would be seeking a candidate for the Third Congressional District special election.

**Defendant's Response:** Undisputed but incomplete. During the press conference, Mr. Bennett acknowledged that it would be challenging to become a registered political party in time to gain access to the ballot through the political party process. He further stated that he was aware of the unaffiliated candidate path to the ballot as well, and that might be something that he would utilize. (Thomas Depo., Doc. 33-1, 53:21-54:7)

3. In interviews with members of the media, Mr. Davis encouraged people who were interested in filing with the United Utah Party to come forward and run under the United Utah Party banner.

**Defendant's Response:** Disputed on the basis of lack of information and belief.

4. At no time prior to May 26, 2017, did the Lieutenant Governor or anyone from his office mention to Mr. Davis or Jim Bennett that if the United Utah Party did not hold its organizing convention prior to May 26, 2017, the Party would not be allowed to run a candidate for the special election to replace Representative Chaffetz.

**Defendant's Response:** Undisputed.

5. The United Utah Party held its organizing and nominating convention on June 17, 2017, in order to meet the June 19 deadline set out in the Lieutenant Governor's May 19 order for political parties to certify their nominees to the Lieutenant Governor.

**Defendant's Response:** Defendant does not dispute that UUP held its organizing and nominating convention on June 17, 2017. Defendant disputes the remainder on the basis of lack of information and belief.

6. The Lieutenant Governor's Office, which includes the Election Office, is currently staffed by approximately eight employees.

**Defendant's Response:** Although Defendant does not dispute that the Lieutenant Governor's office employs approximately 8 employees, the office was very thinly staffed on May 26, 2017, because it was the Friday before Memorial Day. (Davis Depo., 38:12-22).

7. In addition to Mark Thomas, the Director of Elections, the Election Office is staffed by three employees: a deputy election director and two assistants. The Election Office may draw on other employees within the Lieutenant Governor's Office for help if the need arises.

**Defendant's Response:** Undisputed. The Election Office did ask the Salt Lake County Clerk's Office for assistance with the UUP petition, but it was also short-staffed due to the upcoming holiday weekend.

8. When the Election Office reviews petition signatures for political parties or candidate petitions, it begins by verifying that the person who circulated the petition meets the statutory requirements necessary to be a circulator—i.e., that the circulator is a Utah resident over 18 years of age.

**Defendant's Response:** Undisputed.

9. The Election Office then reviews the individual petition signatures and the accompanying address, birthdate, and signature to ensure that information matches the information the State of Utah has on file. For candidate petitions, the Election Office also reviews the petition signatures to ensure that the voter did not sign another petition for the same candidate. Utah's voter registration database (VISTA) usually contains all of the information necessary for the Election Office to review petition signatures.

**Defendant's Response:** Undisputed.  However, a person must verify that the signatures on the petition and signatures in VISTA match.  (*Id*., 25:6-9).

10. If a signature has been collected by a careful circulator, and the name, address, and birth date included on the petition is the same as the information contained in VISTA, it takes approximately 60-90 seconds for the Election Office to review a signature.

**Defendant's Response:** Undisputed.

11. During this special election, two party candidates submitted candidate petition signatures: Tanner Ainge and John Curtis.

**Defendant's Response:** Undisputed.

12. Mr. Ainge submitted his candidate petition signatures on Tuesday, June 6, 2017, or Wednesday, June 7, 2017. The Election Office reviewed those petitions and certified 7,000 signatures within approximately one week.

**Defendant's Response:** Undisputed, except for the date(s) on which Mr. Ainge submitted his candidate petition signatures.  Mr. Ainge submitted some initial signatures on June 5, 2017, and additional signatures on June 9, 2017 and June 12, 2017.

13. Mr. Curtis submitted his candidate petition signatures on June 12, 2017.

The Election Office reviewed those petitions and certified 7,000 within 3-4 days.

**Defendant's Response:** Undisputed.

14. The United Utah Party submitted its party petition signatures to the Utah Election Office on May 25 and 26, 2017.

**Defendant's Response:** Undisputed.

15. The Lieutenant Governor's Office has no information that the signatures the United Utah Party submitted were in bad form or took an unusually long amount of time to verify.

**Defendant's Response:** Disputed.  The Election Office informed UUP on May 25, 2017, that it could not immediately verify approximately ten of UUP's circulators and asked UUP for additional information.  (*Id.*, 37:16-38:11).  Although the Election Office got some of missing information on UUP's circulators on May 26, 2017, at that point the Election Office had to focus on the candidates coming in and filing (May 26 was the last day for candidate filings).  (*Id.*, 38:9-22).  Following May 26, 2017, the Election Office had to focus on candidate petitions subject to a June 2nd deadline, in order to ensure their review was completed in a timely manner. (*Id.*, 38:23-39:5)

16. In preparation for reviewing the candidate petitions of Mr. Ainge and Mr. Curtis, the Election Office hired temporary employees and procured rental space and computer screens for those workers.

**Defendant's Response:** Undisputed, but incomplete.  The Election Office was able to hire temporary employees and procure other resources in time to review the candidate petitions of Mssrs. Ainge and Curtis because these candidates had provided the Election Office advance

5

notice of their intent to file their petitions and the dates of filing.  In stark contrast to the proactivity of Mssrs. Ainge and Curtis, UUP failed to provide the Election Office any advance notice "as to what [its] intentions were and when [it] intended to submit [its] petition." (*Id*., 43:5-7))  As a result, the Election Office did not have any sense as to when UUP's petition would come in, (i*d*., 38:23-39:5) and whether or when it would need additional resources.

17. Although the Election Office had temporary workers available to review petition signatures as early as May 30, 2017, the Election Office did not use any of those workers to review the United Utah Party's petitions. [*See id.* 39-40.] Instead, the Election Office determined that additional resources were not necessary based upon the 30-day statutory review deadline and opted to complete its review using existing internal resources. [*Id.* at 39-40, 43.]

**Defendant's Response:** Undisputed but incomplete.  Another reason that the Election Office did not use temporary workers on UUP's petition because Mr. Bennett/UUP has missed the deadline for declaring his candidacy.

18. The Election Office did not complete its review and certification of the United Utah Party's 2,000 party petition signatures until June 26, 2017. [Dkt. 19, ¶ 45.]

**Defendant's Response:**  Undisputed.

19. The Lieutenant Governor he was aware on May 22, 2017, that the United Utah Party intended to become a political party and run a candidate in the special election. [Thomas Dep. at 47-49, 97.]

**Defendant's Response:**  Undisputed.

20. The Lieutenant Governor has identified no defects in the United Utah Party's process of organizing the party and, barring any technical computer issues with the state system

and the public-based voter registration websites, intends to issue a certification to the United Utah Party on July 13, 2017, confirming that it is a registered political party in the State of Utah. [*Id.* at 57-59.]

**Defendant's Response:**  Undisputed but incomplete because it omits the deficiencies in the process for UUP becoming a qualified political party.  (*See* Exhibit 1).

21. From start to finish, the process for the Lieutenant Governor to review the United Utah Party's party petitions and organizational documents spanned from May 25, 2017 to July 13, 2017—i.e., seven weeks. [*Id.* at 64-65.]

**Defendant's Response:**  Undisputed.

22. The United Utah Party's registration application could have been completed in less than seven weeks if the Lieutenant Governor had taken different steps, such as using the temporary workers the Lieutenant Governor's office had hired to verify the United Utah Party's 2,000 signatures.  [*Id.* at 65-67.]

**Defendant's Response:**  Undisputed.

23. The Lieutenant Governor admits that every single deadline in the May 19 order is one that would not exist but for the May 19 order. [*Id.* at 74-75.] Although the May 19 order compresses the statutory election calendar as compared to the regular election calendar, the May 19 order makes no adjustments to the political party statutory process for becoming a registered political party. [*See* at 68, 76-78.]

**Defendant's Response:**  Undisputed.

24. At the time the Lieutenant Governor issued the May 19 order, "there just wasn't any real discussion related to any potential because I – we just weren't – it wasn't an issue that

had come up, other than in talking about scenarios that – and timeliness and other issues." [*Id.* at 80-81.]

**Defendant's Response:** Disputed. Mr. Thomas recalls a discussion with counsel, but does not recall whether the discussion occurred before or after May 19. (*Id.*, 84:17-85:16).

25. The Lieutenant Governor's Office admits it never made a determination that the Lieutenant Governor couldn't make adjustments in the May 19 order to the political party statutory process for becoming a registered political party. [*Id.* at 78.]

**Defendant's Response:** Disputed. This allegation is not support by the cited deposition page. Further, the Lieutenant Governor's office determined that it was required to follow the political party statutory requirements. (*See* Exhibit 2).

26. Adding additional candidates to an already existing election likely would not result in any cost increase to the State, and the Lieutenant Governor's Office is not aware of any voter confusion that has arisen from any of the other special congressional elections around the country this year. [*Id.* at 85-87.]

**Defendant's Response:** Undisputed but incomplete because it omits Mr. Thomas's testimony with respect to the voter confusion caused by two separate elections in Grand County in 2015. (Thomas Depo., 93:2-9).

27. The Lieutenant Governor's Office has not received any indication from the Green Party that it intends to try to run a candidate in this special election. [*Id.* at 93-94.]

**Defendant's Response:** Undisputed.

28. No one other than Jim Bennett attempted to file a declaration of candidacy for a political party that is not registered seeking to be on the ballot in the special election. [*Id.*]

**Defendant's Response:**  Undisputed.

29.     The Lieutenant Governor's Office has no reason to believe that anyone other than Jim Bennett wanted to run for the United Utah Party nomination for the Third Congressional District. [*Id.* at 96-97.]

**Defendant's Response:**  Undisputed.

30.     The Lieutenant Governor's Office admits that the State of Utah has an interest in complying with the First Amendment to the United States Constitution. [*Id.* at 91.]

**Defendant's Response:**  Undisputed.

31.     The Lieutenant Governor's Office admits that the State of Utah has an interest in protecting the First Amendment rights of Utah voters. [*Id.*]

**Defendant's Response:**  Undisputed.

32.     The Lieutenant Governor's Office admits that the State of Utah has an interest in protecting the First Amendment rights of prospective party candidates and prospective new parties. [*Id.* at 91-92.]

**Defendant's Response:**  Undisputed.

## SUPPLEMENTAL FACTS

Further, Defendant sets forth the following additional facts:

1.      On July 13, 2017, the Lt. Governor certified the United Utah Party as a registered political party.  *See* July 13, 2017 letter from Lt. Governor, Spencer J. Cox to Richard Davis, United Utah Party Chairman, attached hereto as Exhibit 3.

2.      Also on July 13, 2017, the Lt. Governor requested UUP provide additional information concerning whether the it has met the statutory requirements to be a Qualified

Political Party ("QPP"). *See* Second July 13, 2017 Letter, Exhibit 1, *supra* (citing requirements of Utah code section 20A-9-101(12)(a)(ii)). As noted in the this letter, the Lt. Governor had reviewed all of UUP's filings, including the political party's bylaws and constitution and could not find any procedure for remote voting or designating an alternate delegate if a delegate is not present at the registered political party's convention. *Id*. Accordingly, Lt. Governor has requested that the United Utah Party provide him with the "Party's procedures for remote voting or designating an alternate delegate if a delegate is not present at the registered political party's convention." *Id.*

DATED: July 13, 2017.

        OFFICE OF THE UTAH ATTORNEY GENERAL

        /s/ Andrew Dymek
        DAVID N. WOLF
        THOMAS D. ROBERTS
        ANDREW DYMEK
        Assistant Utah Attorneys General
        *Counsel for Defendant*